SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
JOHN T. JASNOCH (CA. BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN M. RODRIGUEZ BELTRAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>        vs.<br><br>TERRAFORM GLOBAL, INC., SUNEDISON, INC., AHMAD CHATILA, CARLOS DOMENECH ZORNOZA, JEREMY AVENIER, MARTIN TRUONG, BRIAN WUEBBELS, J.P. MORGAN SECURITIES LLC., BARCLAYS CAPITAL INC., CITIGROUP GLOBAL MARKETS INC., MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., BTG PACTUAL US CAPITAL, LLC, ITAU BBA USA SECURITIES, INC., SMBC NIKKO SECURITIES AMERICA, INC., SG AMERICAS SECURITIES, LLC., and KOTAK MAHINDRA, INC.,<br><br>                                   Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**<br><br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Juan M. Rodriguez Beltran ("Plaintiff"), individually, and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of TerraForm Global, Inc. ("TerraForm Global" or "the Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst and media reports, and other commentary, analysis, and information concerning TerraForm Global and the industry within which it operates. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against (1) TerraForm Global; (2) the sponsor of the IPO and TerraForm Global's controlling entity, SunEdison, Inc. ("SunEdison"); (3) certain of TerraForm Global's senior executives and directors who signed the July 31, 2015 Registration Statement (as defined below) for TerraForm Global's Initial Public Offering ("IPO") (the "Offering"); and (4) each of the underwriters of the Offering (collectively, "Defendants").

2.      In the IPO, the Company and the Defendants sold 45,000,000 shares of common stock at an offering price of $15.00 per share, representing gross proceeds of $675 million. The Company's common stock is listed on the NASDAQ stock exchange under the ticker symbol "GLBL."

3.      TerraForm Global owns and operates contracted "clean power" generation assets in emerging market countries. Prior to its IPO, TerraForm Global was known as "SunEdison Emerging Markets Co." The bulk of TerraForm Global's business is acquiring power generation assets that produce long-term contracted cash flows, primarily by serving utility and commercial customers from SunEdison. TerraForm Global's business has a focus in Brazil, which represents about 24% of the

Company's current energy generation capacity.  The Company is also active in several other Latin American countries and in China, India, and South Africa.

4.       The Sponsor of the TerraForm Global IPO was SunEdison.  SunEdison is one of the world's largest developers of wind and solar energy projects and is one of the world's prime developers and installers of solar energy facilities.  As the Sponsor, SunEdison maintains approximately 98.1% of TerraForm Global's voting power, making TerraForm Global a controlled company of SunEdison. TerraForm Global is structured as a "YieldCo."  YieldCos are dividend and growth-oriented companies that aim to grow by acquiring assets from their sponsors.   TerraForm Global buys assets from SunEdison when projects are completed.  TerraForm Global then collects revenues from selling power, which enables it to pay dividends to its shareholders.

5.       Plaintiff alleges that the Registration Statement (and Prospectus incorporated therein) contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed.  Defendants are each strictly liable for such misstatements and omissions therefrom (subject only, in the case of the Individual and Underwriter Defendants, to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, offeror, and/or underwriter of the over 45 million TerraForm Global shares sold pursuant to the Offering.  For all of the claims stated herein, Plaintiff expressly disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

6.       Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties.  *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii).  Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on TerraForm Global's business.  Defendants failed to fulfill this obligation.

7.    Defendants failed to disclose a number of problems seriously undermining TerraForm Global's business and prospects.  Specifically, unbeknownst to investors, the Registration Statement's representations were materially untrue, inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that, by the time of the July 31, 2015 IPO: (i) SunEdison was experiencing unprecedented losses that would be revealed mere days after TerraForm Global's IPO was finalized; (ii) SunEdison was experiencing severe liquidity and debt issues that ended its ability to develop projects to sell to TerraForm Global, meaning that the Company's "YieldCo" business model was effectively moribund from the outset; and (iii) the aggressive growth plans for SunEdison and TerraForm Global were unachievable.

8.    The truth concerning the nature and extent of the problems facing the Company did not begin to emerge until the Offering was complete.  On August 6, 2015, only two days after the TerraForm Global IPO closed, SunEdison reported a loss of $263 million in its second quarter on $455 million of revenue, and a net loss of $0.93 per share compared to consensus estimates of a net loss of $0.55 per share.  SunEdison's debt was also reported at nearly $11 billion.  On this news, the Company's shares fell from $13.66 on August 5 to $11.27 on August 6, a drop of over 17%.  On the same day, a *Motley Fool* article, entitled "SunEdison's Losses Become a Red Flag for Investors," noted "how tough it's going to be to build a renewable energy powerhouse with nearly $11 billion in debt and negative cash flow from operations."

9.    In addition, on September 27, 2015 (a Sunday), *Motley Fool* published an article entitled "Once a Hedge Fund Favorite, SunEdison Has a Long Climb Out of Its Current Hole."  The article reiterated concerns regarding SunEdison's excessive debt, stating "[b]ut at the end of the second quarter SunEdison had just $1.29 billion in cash not already committed to projects, and had another $10.7 billion of debt.  Remember that was the company's financial position when it lost $263 million last quarter, so it isn't exactly swimming in cash flow to pay for debt."   As a result of this news, TerraForm Global's stock fell over 10%, from $7.95 on Friday, September 25 to $7.13 on Monday, September 28.

10.    On October 2, 2015, a *BloombergBusiness* article entitled "Investors Are Asking Tough Questions About 'Yieldcos'" examined the financial health of SunEdison's YieldCo business model.

The article quoted the International Energy Agency, stating that the YieldCo business model is "based on increasing the number of projects in its parent developer company in order to generate increasing cash flows for shareholder distributions." Consequently, any reduction in SunEdison projects is a major impediment to TerraForm Global and undermines the YieldCo business model, which is largely built on a consistent volume of projects from SunEdison.

11.    On October 5, 2015, after the markets closed, SunEdison filed a current report on Form 8-K with the SEC announcing that it will lay off about 15% of its 7,300 employees and incur restructuring charges of between $30 and $40 million in Q4 2015 and Q1 2016. On October 6, 2015, the *Wall Street Journal* reported that renewable energy developer, Latin American Power, walked away from its sale to SunEdison because SunEdison failed to make a roughly $400 million upfront cash payment, confirming SunEdison's mounting liquidity issue.

12.    On October 7, 2015, SunEdison revised down its installation projections for 2016 and said it ***did not expect to sell any projects through next year to TerraForm Global***. Rather, SunEdison will be looking exclusively for outside buyers or will hold the projects on SunEdison's balance sheet. In other words, SunEdison has abandoned its YieldCo business strategy, which is TerraForm Global's lifeline. During a conference call with analysts, on the same day, Defendant Chatila stated "[w]e're going to pivot to third-party sales" and "[t]here's a disconnect between the value of these underlying assets and what people are willing to pay for them in a yieldco."

13.    The price of TerraForm Global's shares has continued to trade far below its $15.00 per share Offering price. The stock has plummeted by over 49% since its Offering. As of October 28, 2015, the last trading day before this complaint was filed, the Company's shares closed at $7.52 per share. By this action, Plaintiff, on behalf of himself and the other Class members who also acquired TerraForm Global shares pursuant or traceable to the Offering, now seek to obtain a recovery for the damages they have suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

14.    The claims alleged herein arise under §§11, 12(a)(2), and 15 of the Securities Act. *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o. Jurisdiction and venue are conferred by §22 of the 1933 Act and 28

4

U.S.C. §1331 because many of the acts complained of, including the preparation and dissemination of the materially inaccurate, misleading, and incomplete Registration Statement and Prospectus (which were prepared by Defendants, or with their participation, acquiescence, encouragement, cooperation, and/or assistance) occurred in whole or in substantial part in this Judicial District.   Additionally, Defendant SunEdison and many of the Individual Defendants are located within this Judicial District. Further, in connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

<u>**PARTIES**</u>

A.    <u>**Plaintiff**</u>

15.    Plaintiff purchased shares of TerraForm Global common stock that were issued pursuant and/or traceable to the Registration Statement and the June 31, 2015 IPO Offering, and was damaged thereby.  Plaintiff's certification is attached hereto.

B.    <u>**Defendants**</u>

16.    Defendant TerraForm Global owns and operates renewable energy generation assets worldwide.  The Company generates electricity through solar, wind, and hydro-electric projects and serves utility, commercial, industrial, and governmental customers. TerraForm Global holds wind and solar projects in South Africa, India and China, although it will target additional markets in Brazil, Honduras, Costa Rica, Thailand, Malaysia, Uruguay and Peru.  The Company conducts business in this State.  Prior to the IPO, the financial records of TerraForm Global were reviewed by its auditor KPMG LLP in San Francisco, California.   Correspondence from the SEC regarding the IPO was sent to TerraForm Global at SunEdison's Belmont, California headquarters.

17.    Defendant SunEdison develops, manufactures, and sells silicon wafers and is a major developer and seller of photovoltaic energy solutions.  The company's subsidiary, SunEdison LCC, is one of the world's leading developers of solar energy projects.  The company markets its products to corporations, utilities, governments and chip manufacturers.  Through the Sun Edison LCC subsidiary, SunEdison is one of the world's leading developers of downstream solar energy projects.  SunEdison,

through the ownership by a wholly owned subsidiary of TerraForm Global's Class B common stock, holds approximately 98.1% of the combined voting power of all of TerraForm Global's common stock. SunEdison also represents approximately 34.3% of Global Operating LLC's total outstanding membership units (or 30.5%, if the underwriters exercise in full their option to purchase additional shares of Class A common stock), a wholly owned subsidiary of TerraForm Global.  As stated in the Offering Documents, TerraForm Global's management team and officers "will remain employed by and, in certain cases, will continue to serve as executive officers or other senior officers of SunEdison or its affiliates."  The Offering Documents also state that TerraForm Global is "a 'controlled company,' controlled by our Sponsor[.]"  SunEdison sponsored the IPO for TerraForm Global and was responsible, at least in part, for the false and misleading disclosures contained in the IPO Registration Statement. SunEdison maintains one of its headquarters in this District at 600 Clipper Drive, Belmont, California 94002.

18.    Defendant Carlos Domenech Zornoza ("Zornoza") was, at the time of the Offering, Chief Executive Officer and director of the Company.  Defendant Zornoza signed or authorized the signing of the false and misleading Registration Statement and Prospectus.  Correspondence from the SEC regarding the TerraForm Global IPO was sent to Defendant Zornoza at SunEdison's headquarters in Belmont, California.

19.    Defendant Jeremy Avenier ("Avenier") was, at the time of the Offering, TerraForm Global's Chief Financial Officer ("CFO").  Defendant Avenier signed or authorized the signing of the false and misleading Registration Statement and Prospectus.  From April 2013 to August 2014, Defendant Avenier was the CFO of SunEdison Solar Materials.  Defendant Avenier's "LinkedIn" account represents that he is based in this District.

20.    Defendant Ahmad Chatila ("Chatila") was, at the time of the Offering, Chairman and director of the Company.  Defendant Chatila signed or authorized the signing of the false and misleading Registration Statement and Prospectus.  Defendant Chatila is SunEdison's President and Chief Executive Officer and is based at SunEdison's headquarters in Belmont, California in this District.

21.     Defendant Martin Truong ("Truong") was, at the time of the Offering, a director of the Company.  Defendant Truong signed or authorized the signing of the false and misleading Registration Statement and Prospectus.  Defendant Truong has served as SunEdison's Vice President, General Counsel and Secretary since April of 2013.

22.     Defendant Brian Wuebbels ("Wuebbels") was, at the time of the Offering, a director of the Company.  Defendant Wuebbels signed or authorized the signing of the false and misleading Registration Statement and Prospectus.

23.     Defendants Zornoza, Avenier, Chatila, Truong, and Wuebbels are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement and Prospectus.  Defendant TerraForm Global and the Individual Defendants who signed (or authorized the signing of) the Registration Statement are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement.  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of TerraForm Global's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.

25.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter for the IPO Offering.  In the Offering, J.P. Morgan agreed to purchase 13,500,000 TerraForm Global shares.  J.P. Morgan acted as a joint book-running manager and structuring advisor for the Offering.  This Defendant did business within this District in connection with the Offering.

26.     Defendant Barclays Capital Inc. ("Barclays") was an underwriter for the IPO Offering. In the Offering, Barclays agreed to purchase 9,000,000 TerraForm Global shares.  Barclays acted as a joint book-running manager and structuring advisor for the Offering.  This Defendant did business within this District in connection with the Offering.

27.      Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter for the IPO Offering.  In the Offering, Citigroup agreed to purchase 6,750,000 TerraForm Global shares.  Citigroup

acted as a joint book-runner of the Offering.  This Defendant did business within this District in connection with the Offering.

28.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the IPO Offering.  In the Offering, Morgan Stanley agreed to purchase 5,625,000 TerraForm Global shares. Morgan Stanley acted as a joint book-runner of the Offering.  This Defendant did business within this District in connection with the Offering.

29.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") was an underwriter for the IPO Offering.  In the Offering, Goldman Sachs agreed to purchase 2,340,000 TerraForm Global shares. Goldman Sachs acted as a joint book-runner of the Offering.  This Defendant did business within this District in connection with the Offering.

30.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") was an underwriter for the IPO Offering.   In the Offering, Merrill Lynch agreed to purchase 2,340,000 TerraForm Global shares.  Merrill Lynch acted as a joint book-runner of the Offering.  This Defendant did business within this District in connection with the Offering.

31.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") was an underwriter for the IPO Offering.  In the Offering, Deutsche Bank agreed to purchase 2,340,000 TerraForm Global shares. Deutsche Bank acted as a joint book-runner of the Offering.  This Defendant did business within this District in connection with the Offering.

32.     Defendant BTG Pactual US Capital, LLC ("BTG") was an underwriter for the IPO Offering.  In the Offering, BTG agreed to purchase 663,750 TerraForm Global shares.  BTG served as a co-manager in the Offering.  This Defendant did business within this District in connection with the Offering.

33.     Defendant Itau BBA USA Securities, Inc. ("Itau") was an underwriter for the IPO Offering.  In the Offering, Itau agreed to purchase 663,750 TerraForm Global shares.  Itau served as a co-manager in the Offering. This Defendant did business within this District in connection with the Offering.

34.     Defendant SMBC Nikko Securities America, Inc. ("SMBC Nikko") was an underwriter for the IPO Offering.  In the Offering, SMBC Nikko agreed to purchase 663,750 TerraForm Global shares.  SMBC Nikko served as a co-manager in the Offering.  This Defendant did business within this District in connection with the Offering.

35.     Defendant SG Americas Securities, LLC ("SG Americas") was an underwriter for the IPO Offering.  In the Offering, SG Americas agreed to purchase 663,750 TerraForm Global shares.  SG Americas served as a co-manager in the Offering.  This Defendant did business within this District in connection with the Offering.

36.     Defendant Kotak Mahindra, Inc. ("Kotak") was an underwriter for the IPO Offering.  In the Offering, Kotak agreed to purchase 450,000 TerraForm Global shares.  Kotak served as a co-manager in the Offering.  This Defendant did business within this District in connection with the Offering.

37.     Defendants J.P. Morgan, Barclays, Citigroup, Morgan Stanley, Goldman Sachs, Merrill Lynch, Deutsche Bank, BTG, Itau, SMBC Nikko, SG Americas, and Kotak are referred to collectively as the "Underwriter Defendants."

38.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Offering's Registration Statement and Prospectus.  The Underwriter Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

39.     The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  As the underwriters of the Offering, in addition to their lucrative underwriting fees, they also received an option to purchase up to 6,750,000 additional shares of common stock at the public offering price, less underwriting discounts and commissions.

40.     The Underwriter Defendants determined that, in return for substantial fees and an option to purchase up to 6,750,000 shares, they were willing to underwrite and market TerraForm Global's common stock in the Offering.  The Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company,

its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

41.     Representatives of the Underwriter Defendants also assisted TerraForm Global and the Individual Defendants in planning the Offering.  They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of TerraForm Global, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning TerraForm Global's business, financial condition, products, plans, and prospects.

42.     In addition to having access to internal TerraForm Global corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to TerraForm Global's lawyers, management, directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which TerraForm Global's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about TerraForm Global would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and TerraForm Global's management and top executives, at a minimum the Underwriter Defendants should have known of TerraForm Global's undisclosed existing problems and plans, and the material misstatements and omissions contained in the Registration Statement as detailed herein.

43.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with offers and sales of TerraForm Global shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

**A.     TERRAFORM GLOBAL'S CREATION AND ITS CONNECTION TO SUNEDISON**

44.     TerraForm Global is structured as a "YieldCo."  YieldCos are generally dividend and growth-oriented investments that aim to grow by acquiring assets from their sponsors and third parties

that are characterized by stable, long-term contracted business models.   SunEdison is TerraForm Global's Sponsor.  The Registration Statement states the following regarding SunEdison's control of TerraForm Global:

> **All of our Class B common stock will be held by SunEdison, Inc., or our "Sponsor," or its controlled affiliates**. Each share of Class B common stock entitles our Sponsor to 100 votes on all matters presented to our stockholders generally. Immediately following this offering, the holders of our Class A common stock will collectively hold 100% of the economic interests in us and 1.9% of the voting power in us, and **our Sponsor will hold the remaining 98.1% of the voting power in us. As a result, we will be a "controlled company" within the meaning of the corporate governance standards of the NASDAQ Global Select Market**.

[Emphasis added.]

45.    The YieldCo structure has become popular in the clean power industry, as their sponsors seek higher valuations for their long-term contracted, and cash flow generating assets.  As YieldCos are dividend-oriented investments, most of a company's distributable cash flow is returned to investors.  On the other hand, due to their growth-oriented nature, YieldCos must raise capital in order to finance acquisitions and meet their growth targets over the long term.  As a result, for YieldCos to be attractive investments, ready access to capital is imperative.

46.    The following chart from the Registration Statement summarizes SunEdison's ownership structure regarding TerraForm Global.

CLASS ACTION COMPLAINT



47.    TerraForm Global describes its business objective as: to "increase our dividend to stockholders by continuing to acquire, from SunEdison and unaffiliated third parties, clean power generation assets that produce high-quality, long-term contracted cash flows, primarily by serving utility and commercial customers with strong credit profiles. Our initial target markets will be China, Brazil, India, South Africa, Honduras, Costa Rica, Peru, Uruguay, Malaysia and Thailand."

48.    TerraForm Global has 825 megawatts ("MW") of wind power generating assets, 468 MW of solar power generating assets, and 114 MW of hydroelectric power generating assets.   Its average contract life is 19 years.

49.    Between the announcement of the TerraForm Global IPO and the time when shares were sold, SunEdison announced a number of acquisitions.   On May 7, 2015, SunEdison announced that TerraForm Global publicly filed a Registration Statement on Form S-1 with the SEC relating to the IPO.

CLASS ACTION COMPLAINT

50.     Thereafter on May 21, 2015, a *BloombergBusiness* article entitled "SunEdison Purchases Latin American Power From BTG Pactual" stated that SunEdison "acquired renewable energy developer Latin American Power from Brazil's BTG Pactual Asset Management and its partners."  At the time, Latin American Power had 119 megawatts in hydroelectric and wind energy projects operating in Peru and Chile and was building a pair of wind and hydroelectric projects for a total of 214 megawatts in Chile.  As TerraForm Global is focused on projects in the emergent markets, specifically in Latin America, this acquisition directly affected TerraForm Global.

51.     On July 19, 2015, SunEdison announced that its wholly-owned subsidiary, TerraForm Global, intended to commence an IPO. On the next day, July 20, 2015, SunEdison announced that it would acquire Vivint Solar for approximately $2.2 billion.

**B.     THE INITIAL PUBLIC OFFERING AND TERRAFORM GLOBAL'S MATERIALLY MISLEADING AND INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS**

52.     On July 31, 2015, TerraForm Global conducted its IPO, selling 45 million shares at $15.00 per share to raise approximately $675 million.  The Company also granted the Underwriter Defendants the right to purchase up to an additional 6,750,000 shares of common stock to cover over-allotments.  On August 4, 2015, TerraForm Global filed its final Prospectus with the SEC.

53.     Following the IPO, TerraForm Global would remain majority-owned by its sponsor, SunEdison, through the ownership of Class B shares, according to the Prospectus.

54.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

55.     The Registration Statement stated the following regarding SunEdison's control of TerraForm Global:

> We will have two classes of common stock outstanding after this offering: Class A common stock and Class B common stock. Each share of Class A common stock entitles its holder to one vote on all matters presented to our stockholders generally. All of our Class B common stock will be held by SunEdison, Inc., or our "Sponsor," or its controlled affiliates. Each share of Class B common stock entitles our Sponsor to 100

votes on all matters presented to our stockholders generally. Immediately following this offering, the holders of our Class A common stock will collectively hold 100% of the economic interests in us and 1.9% of the voting power in us, and our Sponsor will hold the remaining 98.1% of the voting power in us. As a result, we will be a "controlled company" within the meaning of the corporate governance standards of the NASDAQ Global Select Market.

56.     The Registration Statement made the following representations concerning TerraForm Global's growth plans and its reliance on SunEdison concerning projection acquisition:

We intend to rapidly expand and diversify our initial portfolio by acquiring utility-scale solar and commercial and industrial distributed solar, wind and hydro-electric power generation assets located in our initial target markets, which we expect will also have long-term PPAs with creditworthy counterparties.

*        *        *

**We believe we will be able to rapidly expand our initial portfolio as a result of the significant project acquisition call rights and rights of first offer, or "ROFO rights,"** **that we have with our Sponsor** and the project acquisition call rights and ROFO rights we have and expect to acquire from third-party developers of clean power generation assets.

[Emphasis added.]

57.     The Registration Statement made the following representations concerning the benefits of TerraForm Global's relationship with SunEdison:

We will enter into a support agreement with our Sponsor immediately prior to the completion of this offering, pursuant to which our Sponsor will agree to offer us additional qualifying projects through the fifth anniversary of the completion of this offering that are projected to generate an aggregate of at least $1.4 billion of cash available for distribution during their respective first twelve months of commercial operations. **We expect that our Sponsor will continue to provide us with the opportunity to acquire additional qualifying projects after it has satisfied its minimum commitment under the support agreement in order to maximize the value of its equity ownership and incentive distribution rights.** The support agreement with our Sponsor will also grant us ROFO rights with respect to additional clean energy projects that our Sponsor elects to sell or otherwise transfer and that are located in our initial target markets or other emerging markets that we mutually agree upon.

[Emphasis added.]

58.     The foregoing statements were misleading because, by the time of the Offering, SunEdison had already experienced massive liquidity and financial setbacks that necessitated

CLASS ACTION COMPLAINT

abandonment of the YieldCo strategy that formed the basis of TerraForm Global's business model. The SunEdison project pipeline that TerraForm Global relied on for its rapid growth plans was no longer being supported. Indeed, only two months later, SunEdison revealed that it did not expect to sell any projects to TerraForm Global through 2016.

59.   Furthermore, the Registration Statement made the following representations concerning the benefits of TerraForm Global's relationship with SunEdison, including its Support Agreement with its Sponsor and SunEdison's previous YieldCo success with TerraForm Power, the Company's first YieldCo:

> We also intend to rapidly expand our project portfolio by acquiring renewable energy projects from third parties. As discussed below, our Sponsor and its operating subsidiary, TerraForm Power, have a strong record of third-party project and corporate acquisitions. We expect that our initial portfolio will include 1.1 GW of projects acquired from third parties in nine acquisitions. We expect to continue to have significant opportunities to acquire projects from third-party developers, enabling us to expand our project portfolio through acquisitions for the foreseeable future.

> *       *       *

> Our U.S.-based Sponsor is the largest globally diversified developer of wind and solar energy projects in the world and has been one of the top three developers and installers of solar energy facilities in the world in each of the past two years based on megawatts installed. As of March 31, 2015, our Sponsor had a 7.5 GW pipeline of development-stage solar and wind projects, including 1.7 GW in our initial and future target markets, and approximately 4.9 GW of self-developed and third-party developed solar and wind power generation assets under management. Our Sponsor has developed over 1,300 solar and wind projects in 20 countries and has completed all of the projects on which it has commenced construction, including over 140 projects in our initial target markets. Our Sponsor has over 1,900 development and operations employees, over 700 of which service our initial and future target markets. We believe we are well positioned to capitalize on favorable market trends in the renewable power generation segment due to our relationship with our Sponsor, which has an established presence in each of our initial target markets, a strong asset development pipeline and acquisition track record, significant project financing experience and asset management and operational expertise.

> *Yieldco experience*

> Our Sponsor has significant experience in acquiring, financing and operating clean power generation assets through a publicly listed dividend-oriented company. We will be the second yieldco vehicle to launch with our Sponsor's support. Our Sponsor's subsidiary, TerraForm Power, which owns and operates clean power assets located in the United

States and other select jurisdictions, completed its initial public offering in July 2014. With our Sponsor's support, TerraForm Power has raised approximately $3.9 billion in acquisition and permanent financing to pursue acquisitions of renewable energy projects totaling 1,703.0 MW as of May 1, 2015. We intend to capitalize on our Sponsor's experience in successfully launching and supporting TerraForm Power.

*       *       *

Immediately prior to the completion of this offering, we will enter into a project support agreement, or the "Support Agreement," with our Sponsor, which will require our Sponsor to offer us additional qualifying projects from its development pipeline through the fifth anniversary of the completion of this offering that are projected to generate an aggregate of at least $1.4 billion of cash available for distribution during the first twelve months following the qualifying projects' respective commercial operation dates, or "Projected FTM CAFD." We refer to these projects as the "Call Right Projects." If the amount of Projected FTM CAFD of the projects we acquire under the Support Agreement through the fifth anniversary of the completion of this offering is less than $1.4 billion, our Sponsor has agreed that it will continue to offer us sufficient, qualifying Call Right Projects from its pipeline until the total aggregate Projected FTM CAFD commitment has been satisfied.

In addition, the Support Agreement grants us a right of first offer with respect to any clean energy projects (other than Call Right Projects) that our Sponsor elects to sell or otherwise transfer during the six-year period following the completion of this offering and that are located in our initial target markets and other emerging markets that we mutually agree upon. We refer to these projects as the "SunEdison ROFO Projects." The Support Agreement does not identify the SunEdison ROFO Projects since our Sponsor will not be obligated to sell any project that would constitute a SunEdison ROFO Project. In the event that our Sponsor elects to sell such assets, it will not be required to accept any offer we make to acquire any SunEdison ROFO Project and, following the completion of good faith negotiations with us, our Sponsor may choose to sell such assets to a third party or not to sell the assets at all.

*       *       *

We believe our Sponsor has demonstrated a successful track record of sourcing long-term capital to fund project acquisitions and the development and construction of projects located in our initial target markets. To date, our Sponsor has raised an aggregate of $3.3 billion since January 1, 2014 to support its development and acquisition activities. We expect that we will realize significant benefits from our Sponsor's financing and structuring expertise as well as its relationships with financial institutions and other providers of capital.

*       *       *

To date, our Sponsor and TerraForm Power have raised an aggregate of $9.4 billion since January 1, 2014, providing them with the capital necessary to acquire projects and

development platforms to grow TerraForm Power's portfolio of operational renewable energy projects in mature markets.

60.     This statement was misleading because, by the time of the Offering, SunEdison had already experienced massive liquidity and financial setbacks that necessitated abandonment of the YieldCo strategy that formed the basis of TerraForm Global's business model. The SunEdison project pipeline that TerraForm Global relied on for its rapid growth plans was no longer being supported. Indeed, only two months later, SunEdison revealed that it did not expect to sell any projects to TerraForm Global through 2016.

61.     When describing SunEdison's mergers and acquisition experience, the Registration Statement stated:

> Our Sponsor: (i) will acquire LAP's [Latin America Power Holding, B.V.'s]asset management platform, its operation and maintenance personnel expertise in Peru and certain rights with respect to a pipeline of Peruvian hydro-electric development assets
>
> *      *      *
>
> Additionally, our Sponsor's pending acquisition of LAP will provide it with a hydro-electric development pipeline in Peru and an operations and maintenance platform in Latin America. We believe our Sponsor's significant acquisition experience and expertise will enable us to expand our portfolio through additional acquisitions of operating projects from unaffiliated third parties in our initial target markets.

62.     This statement was false and misleading because it failed to disclose that, due to its financial setbacks, SunEdison lacked the financial resources to close the LAP acquition.

63.     In addition, pursuant to Item 303 of Regulation S-K (17 C.F.R. §229.303), and the SEC's related interpretive releases thereto, including any known trends, issuers are required to disclose events or uncertainties that have caused, or are reasonably likely to cause, the registrant's financial information not to be indicative of future operating results. Any adverse events and/or uncertainties associated with SunEdison's liquidity, debt, and financial ability to acquire future projects were reasonably likely to have a material impact on TerraForm Global's profitability, and, therefore, were required to be (but were not) disclosed in the Registration Statement under Item 303.

C.      **THE DISCLOSURE OF THE ISSUES AT SUNEDISON AFFECTING TERRAFORM GLOBAL, AND THE RESULTING FALLOUT**

64.      On August 6, 2015, only two days after the TerraForm Global IPO closed on August 4, 2015, TerraForm Global's Sponsor and controlling entity, SunEdison, announced disappointing financial results for the 2015 second quarter. Notably, SunEdison reported a loss of $263 million in its second quarter on $455 million of revenue. SunEdison had a net loss of $0.93 per share compared to Thomson Reuters' consensus estimates of a net loss of $0.55 per share.  The downside of SunEdison's rapid expansion business model had become more apparent to investors. The company's debt had ballooned to $11 billion to fund acquisitions, including a $2.4 billion deal to buy First Wind, a wind farm operator, and the $2.2 billion deal to buy Vivint Solar.

65.      On the same day, *The Motley Fool* published an article entitled "SunEdison's Losses Become a Red Flag for Investors" emphasizing "how tough it's going to be to build a renewable energy powerhouse with nearly $11 billion in debt and negative cash flow from operations."  The article further stated that "[t]he market is finally starting to realize that this high-profile renewable energy powerhouse may actually be building a house of cards. . . . But building that scale has been costly for SunEdison. The company has a $10.7 billion debt load and continual losses quarter after quarter."

66.      In response to the disclosures of August 6, 2015, TerraForm Global shares fell sharply, dropping $2.39 per share, or over 17%.

67.      On August 24, 2015, a *Motley Fool* article entitled "SunEdison's House of Cards Is Starting to Crumble," stated that "[i]nvestors are starting to see exactly what kind of business SunEdison [] has been building with its acquisition spree over the past year, and it may not be what they had expected" and "[SunEdison] doesn't have the balance sheet to build projects and it will have to find very creative ways to fund its growth."

68.      On September 27, 2015, *Motley Fool* published an article entitled "Once a Hedge Fund Favorite, SunEdison Has a Long Climb Out of Its Current Hole."  The article reiterated SunEdison's excessive debt, stating "[b]ut at the end of the second quarter SunEdison had just $1.29 billion in cash not already committed to projects, and had another $10.7 billion of debt.  Remember that was the company's financial position when it lost $263 million last quarter, so it isn't exactly swimming in cash

flow to pay for debt." The article also stated the following regarding SunEdison's growth plan and its yieldco business model:

> In an act of desperation, SunEdison has created what it calls "warehouse vehicles", which will house projects until TerraForm Power or TerraForm Global can buy them. These vehicles are funded by debt and equity, but the cost is much higher than SunEdison would like. Warehouse 1.0 had an effective interest rate of 8.14% for its debt in Q2, and TerraForm Warehouse had an effective interest rate of 6.2% for its debt. Equity investors like First Reserve are also guaranteed returns on their investments, which could add up to $112 million in costs to Warehouse 1.0 alone.

69.    As a result, TerraForm Global's stock fell over 10%, from $7.95 on September 25 to $7.13 on September 28.

70.    On September 30, 2015, *Zacks Equity Research* published an article entitled "SunEdison Dragged by Heavy Debt Burden: Time To Dump?"  The article discussed SunEdison's haphazard acquisition spree and ever-increasing debt expenses. The article stated the following in pertinent part:

> In an effort to strengthen its position as a renewable energy developer, SunEdison has been on an acquisition spree since last year. The company acquired First Wind, Solar Grid Storage and Vivint Solar, among others, to diversify its portfolio. Apart from this, SunEdison made alliances across several countries and won various projects.
>
> These moves, once believed to be strategic, are now being considered ineffective as SunEdison does not have the financial strength to fund the projects. The acquisitions have taken a toll on the company's balance sheet with total outstanding debt nearly doubling to $10.7 billion at the end of second-quarter 2015 from $5.4 billion a year ago.
>
> This resulted in a massive increase in interest expenses. In the first half of 2015, the company spent $302 million on interest expenses compared with $160 million in the comparable year-ago period. Apart from this, the company has been incurring losses from the semiconductor business and increased operating expenses.

71.    On October 5, 2015, after the markets closed, SunEdison filed a current report on Form 8-K with the SEC announcing that it will lay off about 15% of its 7,300 employees and incur restructuring charges of between $30 and $40 million in Q3 2015 through Q1 2016.

72.    Also on October 6, 2015, the *Wall Street Journal* reported that Latin American Power, walked away from its $700 million sale to SunEdison because SunEdison failed to make a roughly $400 million upfront cash payment.  The deal was expected to close on September 30, 2015.  As part of

SunEdison's recent acquisition spree, SunEdison agreed to acquire Latin American Power, an owner of wind and hydropower projects in Chile and Peru, TerraForm Global's energy sector.  The article cited a lawyer for Latin American Power, Michael B. Carlinsky of Quinn Emanuel Urquhart & Sullivan LLP, who said: "[Latin America Power] [is] confident that the record will show that SunEdison breached its contractual obligations."

73.    On October 7, 2015, SunEdison also revised down its installation projections for 2016 and said it does not expect to sell any projects through next year to its two yieldcos, TerraForm Power and TerraForm Global. During a conference call with analysts, Defendant Chatila said, "[w]e're going to pivot to third-party sales" and "[t]here's a disconnect between the value of these underlying assets and what people are willing to pay for them in a yieldco."  SunEdison now hopes to sell renewable energy projects it develops to utilities and other existing power plant operators.  SunEdison will also forego investments in countries including the U.K., where renewable energy projects aren't as profitable as the U.S., and will reduce expansion plans in Latin America and other overseas markets, TerraForm's area of focus.  On a conference call with investors, Chatila stated, "[w]e de-emphasized countries, consolidated divisions and walked away from things that didn't make sense in the current dislocation in the market."

74.    On the same day, a *BloombergBusiness* article entitled "SunEdison Pivots Away From Yield Companies That Can't Buy Plants" stated the following regarding the demise of SunEdison's yieldco structure:

> With their share prices down, the two TerraForm companies are no longer in a position to purchase power plants, Chatila said Wednesday during a conference call with analysts. That means he's looking for outside buyers or will hold the projects on SunEdison's balance sheet. It's the latest sign that this model, known as yieldcos, is falling from favor in the renewable energy industry.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

75.    Plaintiff brings this action as a class action on behalf of a Class, consisting of all those who purchased TerraForm Global's common stock pursuant or traceable to the Company's Offering and Registration Statement and who were damaged thereby (the "Class").  Excluded from the Class are Defendants; the officers and directors of the Company at all relevant times; members of their immediate

families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

76.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class.  The members of the proposed Class may be identified from records maintained by TerraForm Global or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

77.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

78.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

79.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

c.     to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

80.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**
**Violations of §11 of the Securities Act**
**Against All Defendants Except SunEdison**

81.     All references to "Defendants" under this claim exclude SunEdison.

82.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.     This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

84.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

85.     Defendant TerraForm Global is the issuer of the securities purchased by Plaintiff and the Class.  As such, TerraForm Global is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

86.     The Individual Defendants each signed the Registration Statement.  As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, and to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

87.     The Underwriter Defendants each served as underwriters in connection with the Offering.  As such, each is strictly liable for the materially inaccurate statements contained in the Registration

Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. These Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Registration Statement, and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

88.     By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

89.     Plaintiff acquired TerraForm Global's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein. Plaintiff sustained damages, and the price of TerraForm Global's common stock declined substantially due to material misstatements in the Registration Statement.

90.     This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

91.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

### SECOND CLAIM
### Violations of §12(a)(2) of the Securities Act
### Against All Defendants

92.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.     Defendants were sellers, offerors, and/or solicitors of purchasers of the TerraForm Global securities offered pursuant to the Offering. Defendants issued, caused to be issued, and signed the

Registration Statement in connection with the Offering.  The Registration Statement was used to induce investors, such as Plaintiff and the other members of the Class, to purchase TerraForm Global shares.

94.    The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  Defendants' acts of solicitation included participating in the preparation of the false and misleading Registration Statement.

95.    As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

96.    Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

97.    The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.   None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

98.    This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after TerraForm Global shares were sold to the Class in connection with the Offering.

### THIRD CLAIM
**Violations of §15 of the Securities Act**
**Against the Individual Defendants and SunEdison**

99.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

100.    The Individual Defendants and SunEdison were controlling persons of TerraForm Global within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior

CLASS ACTION COMPLAINT

management positions at, and/or directorships held at the Company, as alleged above, these Defendants invest in, individually and collectively, had the power to influence, and exercised the same, over TerraForm Global to cause TerraForm Global to engage in the conduct complained of herein.

101.    By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of TerraForm Global's shares.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action and certifying Plaintiff as Class representative;

B.    Awarding Plaintiff and the other members of the Class compensatory damages;

C.    Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2) claims;

D.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.    Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: October 29, 2015                    **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**


                                            s/ John T. Jasnoch
                                            JOHN T. JASNOCH (CA BAR NO. 281605)
                                            707 Broadway, Suite 1000
                                            San Diego, CA 92101
                                            Telephone:    (619) 233-4565
                                            Facsimile:     (619) 233-0508
                                            jjasnoch@scott-scott.com

Thomas L. Laughlin
Joseph V. Halloran (CA BAR NO. 288617)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile:  212-223-6334
tlaughlin@scott-scott.com
jhalloran@scott-scott.com

*Attorneys for Plaintiff Juan M. Rodriguez Beltran*

CLASS ACTION COMPLAINT

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Juan M. Rodriguez Beltran, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.      I have reviewed the Complaint in this matter and authorize Scott+Scott, Attorneys at Law, LLP to pursue this action and authorize this filing on my behalf. .

2.      I am willing to serve as a representative party on behalf of the purchasers of TerraForm Global, Inc. ("TerraForm Global") securities during the Class Period, including, providing testimony at deposition and trial, if necessary.

3.      During the Class Period, I purchased and/or sold the security that is the subject of the Complaint as set forth on the attached Schedule A.

4.      I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5.      During the three-year period preceding the date of the signing of this Certification, I did not seek to serve, or served, as a representative party or lead plaintiff on behalf of a class in the following private actions arising under the Securities Act or the Exchange Act.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at _____San Francisco, CA_____. (City, State)


10/19/2015
_____
Date

_____
Juan M. Rodriguez Beltran

## SCHEDULE A

### *Juan M. Rodriguez Beltran*

Transactions in TERRAFORM GLOBAL, INC.

| Trade Date | Action (Buy/Sell) | Quantity | Price Per Share |
|------------|-------------------|----------|-----------------|
| 07/31/2015 | Buy | 41 | $14.18 |
| 08/06/2015 | Buy | 200 | $12.36 |